**Collin L. JOHNSON, a/k/a Samuel Glenn, Appellant**

v.

**Ralph L. WILLIAMS, Warden, Attorney General of the State of New Jersey.**

**No. 81–1591.**

United States Court of Appeals, Third Circuit.

Argued Oct. 27, 1981.

Decided Dec. 15, 1981.

John F. McMahon (argued), Federal Public Defender, Newark, N. J., for Appellant.

James R. Zazzali, Atty. Gen. of New Jersey, Trenton, N. J., for appellees; Carol M. Henderson (argued), Deputy Atty. Gen., Div. of Criminal Justice, Princeton, N. J., of counsel and on the Brief.

ADAMS, VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In 1963, appellant Collin L. Johnson was convicted of robbery with a deadly weapon, in violation of the laws of Maryland, and sentenced to a term of 40 years at the Maryland House of Corrections. Johnson escaped from that facility in November 1971. A little over a year later, in December 1972, while still a fugitive from Maryland, Johnson was arrested in New Jersey and charged, under three separate indictments, with a variety of state crimes involving robbery and the use of a deadly weapon. The three indictments were tried separately. Johnson was convicted under the first indictment on October 26, 1973, was sentenced to a term of four to six years, and immediately began to serve that term at the Rahway State Prison in New Jersey. The Maryland authorities subsequently learned of Johnson's incarceration in New Jersey and lodged a detainer with the New Jersey prison authorities requesting the release of Johnson to their custody after completion of all New Jersey proceedings against him. On October 18, 1975, a trial began on the second New Jersey indictment against Johnson, and the jury returned a guilty verdict on November 18. On December 16, 1975, before Johnson was sentenced on that second conviction, he was paroled from his prison sentence under the first conviction and the Parole Commission, perhaps unaware of Johnson's second New Jersey conviction, released him to the Maryland authorities.

The New Jersey prosecutor lodged a detainer with the Maryland House of Corrections on February 5, 1976, requesting temporary custody of Johnson for sentencing. On March 19, Johnson was returned to New Jersey. At that time the third indictment was dismissed and he was sentenced under the second indictment to an aggregate term of 18 to 23 years in state prison, to be served consecutive to his Maryland sentence. Several days later Johnson was returned to Maryland, where he remained until his Maryland parole in December of

1979. When Johnson received his Maryland parole, he was returned to New Jersey to begin serving his sentence there.

■ Johnson alleges that New Jersey, by returning him to Maryland following his second trial in New Jersey and then bringing him back within its jurisdiction by detainer for sentencing, violated the Interstate Agreement on Detainers (IAD), N.J. Stat.Ann. § 2A:159A–1 et seq. (West 1971), to which both New Jersey and Maryland are parties. The IAD provides that when a state party to the agreement obtains custody of a defendant from another participating state by means of a detainer, it must complete all criminal proceedings pending against the defendant in the receiving state before the defendant may be returned to the sending state. Alleging that New Jersey failed to satisfy this requirement, Johnson filed a petition for habeas corpus in the United States District Court for the District of New Jersey, maintaining that he was entitled to dismissal of the New Jersey indictment against him, and requesting the district court to order his release from New Jersey custody. Johnson also claimed that there were several other defects in New Jersey's conduct which, he asserted, constituted IAD violations. The district court held that no IAD violation occurred, and therefore denied Johnson's petition for habeas corpus relief. Johnson filed a timely appeal. We now affirm the judgment of the district court, 508 F.Supp. 52.[1]

The IAD imposes a requirement on a receiving state to complete legal proceedings before returning a defendant to the sending state only when the receiving state acquired custody of the defendant by means of a detainer. N.J.Stat.Ann. § 2A:159A–4 (West 1971). In this case, Johnson initially came within the jurisdiction of the New Jersey courts not by detainer but by his own criminal conduct following his escape from the Maryland House of Corrections. Therefore, although it might be asserted

that sentencing is a part of the trial process that must, under the IAD, be completed before a prisoner on detainer is returned to the imprisoning state—an argument, it should be emphasized, that we do not resolve here—such a rule would have no bearing on the case before us. Johnson simply was not in New Jersey pursuant to a New Jersey detainer at the time he was first returned to Maryland. When New Jersey obtained custody of Johnson the second time, by means of a detainer, it completed the sentencing hearing and dismissed the remaining indictment against him. New Jersey, by returning Johnson to Maryland at that point to complete his Maryland prison term, cannot be considered to have violated any provision of the IAD. And New Jersey's final detainer, filed to obtain custody of Johnson following completion of his Maryland sentence so that Johnson could serve his New Jersey sentence, does not fall within the ambit of the IAD, which addresses only detainers for the purpose of completing pending criminal proceedings. See N.J.Stat.Ann. § 2A:159A–1 (West 1971). Accordingly, the district court did not err when it decided that Johnson's IAD claim was without merit.

■ Appellant's two other claims under the IAD also cannot succeed. Johnson alleges that New Jersey failed to accede to the alleged request by Maryland officials that he be returned to Maryland only after he had completed his New Jersey sentence. But this allegation mischaracterizes the language employed by Maryland in its detainer filed with New Jersey; Maryland sought only to obtain Johnson following the completion of "legal proceedings" against Johnson. The term "legal proceedings" can hardly be construed to encompass the service of a sentence. Moreover, even if we were to conclude that "legal proceedings" include the sentencing hearing, which was not completed prior to Johnson's return, we find no support for the proposition that this return, otherwise outside the scope of the

---

1. Because the IAD has been held to constitute a law of the United States, see Cuyler v. Adams, 449 U.S. 433, 438–42, 101 S.Ct. 703, 707–09, 66 L.Ed.2d 641 (1981); United States ex rel. Esola v. Groomes, 520 F.2d 830, 835 (3d Cir. 1975), the federal courts have habeas corpus jurisdiction, pursuant to 28 U.S.C. § 2254, over the IAD violation asserted here.

IAD for the reasons discussed above, would constitute an IAD violation by New Jersey simply because of the language employed in the Maryland detainer.

 Johnson's final IAD claim, that New Jersey's detainer filed in Maryland was misleading because it suggested that Johnson would be tried rather than sentenced, is no more persuasive. Again, even if we accepted the argument that the challenged language—a preprinted statement on the form that "I propose to bring this person to trial on this (indictment)"—was misleading, we find no support or reasoning under the IAD to suggest that use of this language would constitute an IAD violation entitling the defendant to dismissal of all charges against him.

For the foregoing reasons, the order of the district court will be affirmed.